Lucian C. Chen
Todd Nosher
Michael Kivowitz
**MANDELBAUM BARRETT PC**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
tnosher@mblawfirm.com
lchen@mblawfirm.com
Phone: 973-736-4600
Fax: 973-325-7467

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SADKHIN FRANCHISING COMPANY LLC | ) ) ) ) ) |
| Plaintiff, | ) ) CASE NO. _____ ) |
| v. | ) ) *DOCUMENT ELECTRONICALLY FILED* |
| STEPHANIE ZAMORA and SAZ MANAGEMENT, LLC | ) *VIA CM/ECF* ) ) Jury Trial Requested |
| Defendants. | ) ) ) ) ) ) ) |

## <u>PLAINTIFFS' VERIFIED COMPLAINT</u>

Sadkhin Franchising Company LLC ("Sadkhin Franchising" or "Plaintiff"), by and through its undersigned counsel, Mandelbaum Barrett P.C., for its Verified Complaint against Defendants Stephanie Zamora ("Zamora") and SAZ Management, LLC ("SAZ") (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

1.  Plaintiff seeks damages and relief against Defendants in connection with Defendants' misappropriation of Plaintiffs' trade secrets and sensitive, proprietary materials; breach of the Parties' Franchise Agreement and unfair competition.

## PARTIES

2.  Plaintiff Sadkhin Franchising Company LLC is a New York limited liability with a location at 271 Madison Ave., Suite 802, New York, NY 10016.

3.  On information and belief, Defendant Stephanie Zamora ("Zamora"), an individual, is a New Jersey citizen, residing in Cranford, New Jersey in Union County.

4.  On information and belief, SAZ Management, LLC ("SAZ") is a New Jersey Limited Liability Company having a place of business at 20 Sheffield Road, Summit, New Jersey in Union County.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over Plaintiff's trade secret claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. 1836(b) and (c) because those claims arise out of the Defend Trade Secrets Act of 2016 and Defendants' violation of the same.

6.  Jurisdiction is also based upon 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between the parties with Plaintiff being a citizen of New York, and Defendants both being citizens of New Jersey, and because the amount in controversy exceeds $75,000.00.

7.  This Court also has supplemental jurisdiction pursuant to *inter alia* 28 U.S.C § 1367 over all other Plaintiff's claims that do not arise under the Constitution, laws, and/or treaties of the United

States and thus are without original subject matter jurisdiction, including all claims arising out of state and common law.

8.   This Court has personal jurisdiction over Defendant SAZ because SAZ has at least the requisite continuous and systematic minimum contracts with this forum. Here, Plaintiff's claims arise directly out of SAZ's contact in this forum and SAZ has purposefully availed itself of the privilege of doing business in the forum. By way of example, SAZ has voluntarily entered into contract(s) with Plaintiff, a New York entity, including the Franchise Agreement whereby SAZ consents to the jurisdiction of this forum and District. Additionally, SAZ has committed and continues to commit trade secret misappropriation and tortious acts in this forum, has purposely availed itself of the benefits and protections of this forum, derives revenue from commerce in this forum and, therefore, can reasonably expect that its actions have consequences here.

9.   This Court has personal jurisdiction over Defendant Zamora because Zamora has at least the requisite continuous and systematic minimum contracts with this forum. Here, Plaintiff's claims arise directly out of Zamora's contact in this forum and Zamora has purposefully availed herself of the privilege of doing business in the forum. By way of example, Zamora has voluntarily entered into contract(s) with Plaintiff, a New York entity, including the Franchise Agreement whereby Zamora consents to the jurisdiction of this forum and District. Additionally, Zamora has committed and continues to commit trade secret misappropriation and tortious acts in this forum, has purposely availed herself of the benefits and protections of this forum, derives revenue from commerce in this forum and, therefore, can reasonably expect that her actions have consequences here.

10. Venue in this District is proper under at least 28 U.S.C. §§ 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District. Moreover, the Parties' Franchise Agreement makes clear that the Parties' agree that "any litigation arising out of this

Docusign Envelope ID: 86654067-52F9-44CF-A1BE-4B9859074537

Agreement or the Franchised Business will take place in the United States District Court for the Eastern District of New York…"

## FACTUAL BACKGROUND

11. Gregory Sadkhin is a pioneer in the field of weight loss science and has developed novel methods of weight loss treatment. Indeed, Gregory Sadkhin has developed a vast portfolio of intellectual property, know-how, methods and/or trade secrets relating to his weight loss methods and businesses.

12. Gregory Sadkhin has, *inter alia*, developed the novel Sadkhin weight loss method (the "Sadkhin Method®") that helps his clients across the country address and overcome their struggles with weight loss and improve their general health and wellness.

13. Gabrielle Sadkhin is the founder of Sadkhin Franchising Company LLC ("Sadkhin Franchising"), which owns, operates and/or franchises weight loss centers in certain states throughout the country (the "Sadkhin Weight Loss Centers").

14. For over 30 years, Sadkhin Weight Loss Centers have become leaders in the field and are known across United States to practice the only natural method for achieving complete Hunger Control and introducing hunger management as a main element for natural, fast, and completely safe weight loss, *i.e.*, the Sadkhin Method®.

15. The Sadkhin Method® implements the use of 16 biologically active points (the "Sadkhin Points®") through a technique called chrono-stimulation to effectively reduce hunger, dissolve fatty tissue, and maintain long-term weight loss results and wellness. Indeed, to provide the body with proper nutrients to sustain a healthy function, it has combined a method with a specific food plan consisting of fruits, vegetables and dairy or lactose free alternatives that include many options for Vegans.

4913-7989-3038, v. 1

16. Ultimately, the Sadkhin Method® attacks the problem of obesity and excess weight at its source, *i.e.*, hunger. And this novel, non-invasive weight loss solution works on one's body without their active participation.

**A.** **Plaintiffs' Intellectual Property**

17. Sadkhin Franchising owns all rights, title and interest in and to a portfolio of intellectual property (collectively, the "Sadkhin IP"), including without limitation, novel and proprietary systems, methods, names, trade secrets, software, and know-how, among other IP.

18. By way of example and of significant import to this action, Sadkhin Franchising owns all rights, title and interest in and to the "Sadkhin System," a proprietary collection of trade secrets and other confidential material that are strictly protected and maintained by Sadkhin Franchising for its use and the use of properly licensed Franchisees under the terms and strict confidentiality of the Sadkhin Franchising Agreement.

19. The Sadkhin System includes, without limitation, the Sadkhin Manual, *i.e.*, the entity's proprietary and highly confidential operations manual, along with countless proprietary training programs, materials, databases, business methods and other know how.

20. Among the Sadkhin IP are extensive highly confidential and strictly held databases containing, among other things, client lists, client contact information and other proprietary information.

**B.** **The Sadkhin Franchising Business**

21. Sadkhin Franchising franchises its successful weight loss business model to franchisees pursuant to the Sadkhin Franchising Agreement.

22. Upon entering into the Franchise Agreement with Sadkhin Franchising, franchisees obtain certain limited rights, whose scope is clearly defined and governed by the Sadkhin Franchising Agreement.

23. The certain limited rights granted to franchisees pursuant to the Franchise Agreement include certain limited rights to the Sadkhin IP.

24. By way of example, under the terms of the Franchise Agreement, franchisees are required to hold all subject intellectual property and confidential information in strict confidence with the utmost protection.

25. Franchisees are also bound by non-solicitation and non-compete covenants, among other restrictions.

26. Franchisees are further subject to specific termination provisions whereby Sadkhin Franchising may terminate the Franchise Agreement for good cause effective immediately upon notice for a wide range of reasons consisting of good cause, including breach of the non-compete covenants.

27. Sadkhin Franchising may also terminate franchisees without good cause and/or based on default under the terms of the agreement.

28. Indeed, the Franchise Agreement sets forth clear post-termination rights and obligations for terminated franchisees, such as the immediate cease and termination of the franchisee's use of the all Sadkhin IP including the Sadkhin Manual; a requisite change of identification; the prompt return of all client lists, contact information and other sensitive proprietary material; non-solicitation and non-compete guidelines for a period of two years; and the return of all Sadkhin Franchising property.

29. In fact, Sadkhin Franchising places such importance on its proprietary and highly sensitive manual due to its significant value as a company trade secret, the Franchise Agreement makes clear

that franchisees must pay $5,000, at a minimum for each copy, for any failure to return the Sadkhin Manual alone given the import and proprietary nature of the manual.

30. The Franchise Agreement also sets forth other remedies in law and equity for Sadkhin Franchising to enforce its rights under the agreement and to protect its intellectual property inclusive of company trade secrets.

**C. Defendants Brief Time as a Franchisee**

31. On or about August 3, 2020, Defendants entered into a Franchise Agreement with Sadkhin Franchising.

32. Despite Sadkhin Franchising having promising hopes for Defendants, and after providing Defendants every opportunity and resource to succeed, Defendants were not only commercially unsuccessful but quickly began to, *inter alia*, promote non-Sadkhin products, methods and practices to Sadkhin Clients in breach and violation of the Franchise Agreement.

33. Defendants were warned on multiple occasion that they were not permitted to engage in such conduct as it: violated the Franchise Agreement; caused competition with the Company; and constituted an unauthorized use of the Company's intellectual property.

34. But regrettably, it became clear that Defendants were simply using Sadkhin Franchising resources for their own sole gain, including to launch Zamora's own business and to promote herself and her company.

35. Indeed, despite the clear provisions of the Franchise Agreement, and Defendants' obligations and responsibilities thereunder, including Defendants' express agreement not to "divert or attempt to divert any business or client or attendee of [Sadkhin] or any of [its] affiliates or franchisees to any competitor," and to use "best efforts to otherwise develop and promote the

Franchised Business," Defendants continued with their campaign of self-promotion and increased their competition with Sadkhin Franchising.

36. Defendant Zamora also, on information and belief, surreptitiously created a hard-copy print out of the Sadkhin Client database including Sadkhin Franchising's entire client list containing name and contact information for the company's 300,000 clients.

37. Defendants ignored all warnings by Sadkhin Franchising to stop their violative acts.

38. Defendants culminated their anti-Sadkhin efforts by ultimately sending a "resignation" email to the company, stating that Zamara was resigning as "practitioner," without regard to Defendants' obligations under the Franchise Agreement.

**D.** **Defendants' Misappropriation of Trade Secrets and Breach of Franchise Agreement.**

39. In response to Defendants' actions described *supra*, and notwithstanding Defendants' non-complaint resignation efforts, Sadkhin Franchising asked that Defendants sign the standard paperwork given to all franchisees and practitioners, upon termination of their practice.

40. By way of example, on August 12, 2024, Mr. Daniel Radinsky of Sadkhin Franchising texted Defendants to remind them to sign said documents, but they ignored him.

41. Mr. Radinsky again contacted Defendants on August 16th and August 26th and asked them to return all Sadkhin Franchising proprietary materials pursuant to the Franchise Agreement in view of the undisputed fact that Defendants impermissibly misappropriated and retained such materials after departure.

42. Indeed, Defendants specifically misappropriated and refused to return a hard copy printout of the Sadkhin client database and client list, containing approximately 300,000 client names and contact information.

43. Defendants also specifically misappropriated and refused to return at least the Sadkhin Manual and Certified Sadkhin Therapy Practitioner diplomas.

44. Defendants also refused to return at least $13,000 in royalties that were owed to Sadkhin Franchising by Defendants under the terms of the Franchise Agreement.

45. Incredibly, and instead of complying with her contractual obligations under the Franchise Agreement, Zamora threatened her own legal actions against Mr. Radinsky based on false and frivolous claims, and attempted to leverage such frivolous claims to leverage Defendants' departure "demands" despite their numerous violative acts.

46. Plaintiffs have made repeated requests to Defendants to not only cease and desist from their breaching acts, but also to return all company materials forthwith.

47. Defendants have refused both requests.

48. Indeed, Defendants continue their refusal to return the Sadkhin protected tools and materials to practice the Sadkhin Method, including without limitation, the Sadkhin Manual and Certified Sadkhin Therapy Practitioner diplomas.

## CAUSES OF ACTION

## COUNT I – VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016
### (Against all Defendants)

49. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

50. Plaintiffs own and possess certain confidential, proprietary, and trade secret information, as alleged above.

51. One example of the trade secret information is reflected in the Sadkhin Manual, a proprietary and highly sensitive operations manual that contains business methods, plans and other

trade secret information relating to the highly successful Sadkhin System. Other examples include, without limitation, proprietary clients lists, phone lists, and other know how.

52. Plaintiffs' confidential, proprietary, and trade secret information relates to services and/or products used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate commerce.

53. Plaintiffs have taken reasonable measures to keep such information secret and confidential.

54. By way of example, franchisees are bound by strict confidentiality provisions of the Franchise Agreement, which prohibits both the disclosure, and unlawful retention of, such confidential, proprietary, and trade secret information.

55. In fact, Section 11.02 of the Franchise Agreement speaks to the strict requirements for the protection of confidential information and trade secrets, including the requirement that franchisees keep the Sadkhin Manual in a "locked location," and requiring third-parties to enter into confidentiality agreements before any disclosure thereto.

56. Plaintiffs also require all employees, contractors, consultants, vendors, and franchisees to sign confidentiality agreements and/or the equivalent before any confidential or proprietary trade secret information is disclosed to them.

57. Due to these security measures, Plaintiffs' confidential and proprietary trade secret information is not available for others in the industry to use through any legitimate means.

58. Plaintiffs' confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

Docusign Envelope ID: 86654067-52F9-44CF-A1DE-4B9859074537

59. In violation of Plaintiffs' rights, and in contravention of the Franchise Agreement, Defendants misappropriated Plaintiffs' confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.

60. Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

61. Despite repeated requests from Plaintiffs, Defendants continue to withhold and refuse to return said materials.

62. On information and belief, without intervention from this Court, Defendants will continue to misappropriate and use Plaintiffs' trade secret information for their own benefit and to Plaintiffs' detriment.

63. As the direct and proximate result of Defendants' conduct, Plaintiffs' have suffered and, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.

64. Because Plaintiffs' remedy at law is inadequate, they seek, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests.

65. Plaintiffs have been damaged by all of the foregoing and are entitled to an award of damages and other remedies in law and equity, including damages to be determined at trial and an award of attorney's fees under 18 U.S.C. § 1836(b)(3)(d) for Defendants willfully and malicious misappropriation.

## COUNT II – COMMON LAW MISAPPROPRIATION OF TRADE SECRETS
### (Against all Defendants)

66. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

Docusign Envelope ID: 86654067-52F9-44CF-A1DE-4B9859074537

67. Plaintiffs own and possess certain confidential, proprietary and trade secret information, as alleged above.

68. Plaintiffs have taken reasonable measures to keep such information secret and confidential.

69. This confidential, proprietary and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

70. This confidential, proprietary, and trade secret information was made accessible to Defendants by virtue of their obligations and rights under the Franchise Agreement.

71. In violation of Plaintiffs' rights, and in breach of Defendants' contractual obligations to maintain secrecy, Defendants misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.

72. Defendants' misappropriation of the confidential, proprietary and trade secret information was intentional, knowing, willful and oppressive.

73. Defendants' continued possession of Plaintiffs' trade secrets places them in a position to use or disclose such information.

74. The information taken by Defendants would provide invaluable competitive information to any skilled third party in the field including to use such information to unfairly compete with Plaintiffs.

75. As the direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.

## <u>COUNT III – BREACH OF FRANCHISE AGREEMENT</u>
### <u>(Against all Defendants)</u>

76. Plaintiffs incorporates all of the above paragraphs as though fully set forth herein.

Docusign Envelope ID: 86654067-52F9-44CF-A1DE-4B9859074537

77. The Franchise Agreement between Sadkhin Franchising and Defendants constitutes a valid, enforceable written contract.

78. Sadkhin Franchising has performed and complied with all applicable conditions and obligations under the Franchise Agreement.

79. Defendants have breached the Franchise Agreement by virtue of, *inter alia*, violating Sections 6.19, through Defendants' unlawful solicitation and competitive acts during the Term as described herein *supra*.

80. Defendants have also breached the Franchise Agreement by virtue of, *inter alia*, violating Sections 8.02, through Defendants' failure to remit the agreed upon Royalty Fee.

81. Defendants have also breached the Franchise Agreement by virtue of, *inter alia*, violating Sections 17.02, through Defendants' failure to remit the payments owed to Sadkhin Franchising .

82. Defendants have also breached the Franchise Agreement by virtue of, *inter alia*, violating Sections 17.03, through Defendants' failure to return the Sadkhin Manual and Other Materials.

83. Defendants have also breached the Franchise Agreement by virtue of, *inter alia*, violating Sections 17.09, through Defendants' unlawful solicitation and/or competitive acts post-termination as described *supra*.

84. Defendants have also breached the Franchise Agreement by virtue of, *inter alia*, violating Sections 17.10, in Defendants' through Defendants' refusal to comply with other post-termination obligations.

85. These are but a few examples of Defendants' breaching acts and do not encompass the entirety of all of Defendants' breach.

86. As a result of their breach, Defendants have caused Sadkhin Franchising to suffer damages in an amount to be proven at trial.

4913-7989-3038, v. 1

## COUNT IV – BREACH OF IMPLIED CONVENANT OF GOOD FAITH AND DEALING
### (Against all Defendants)

87. Plaintiffs incorporates all of the above paragraphs as though fully set forth herein.

88. The Franchise Agreement between Sadkhin Franchising and Defendants constitutes a valid, enforceable written contract.

89. Defendants owe Sadkhin Franchising the duty and obligation of good faith and fair dealing that underlies their contractual obligations and Defendants have a corresponding legal obligation not to act in bad faith.

90. Sadkhin Franchising has complied with all applicable conditions of the Franchise Agreement.

91. Defendants have acted in bad faith, with the purpose of depriving the Sadkhin Franchising of its rights or benefits under the contract.

92. By way of example, Defendants have acted in bad faith by attempting to misappropriate Sadkhin Franchising trade secrets and refusing to return the same, and by, on information and belief, unlawfully competing with Sadkhin Franchising.

93. Defendants have acted in bad faith as described supra in violation of their obligation not to do thereby forcing Counterclaim Plaintiffs to expend resources in litigation to protect its contractual rights.

94. Sadkhin Franchising has suffered damages resulting from Defendants' breaches of their duty of good faith and fair dealing and corresponding bad faith, in an amount to be proven at trial.

## COUNT V – COMMON LAW UNFAIR COMPETITION
### (Against all Defendants)

95. Plaintiffs incorporates all of the above paragraphs as though fully set forth herein.

4913-7989-3038, v. 1

Docusign Envelope ID: 86654067-52F9-44CF-A1DE-4B9859074537

96. Plaintiffs own and possess certain confidential, proprietary and trade secret information, as alleged above.

97. Plaintiffs have taken reasonable measures to keep such information secret and confidential.

98. This confidential, proprietary and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

99. This confidential, proprietary, and trade secret information was made accessible to Defendants by virtue of their obligations and rights under the Franchise Agreement.

100.    In violation of Plaintiffs' rights, and in breach of Defendants' contractual obligations to maintain secrecy, Defendants misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.

101.    Defendants' misappropriation of the confidential, proprietary and trade secret information was intentional, knowing, willful and oppressive.

102.    Defendants' continued possession of Plaintiffs' trade secrets places them in a position to use or disclose such information.

103.    The information taken by Defendants would provide invaluable competitive information to any skilled third party in the field including to use such information to unfairly compete with Plaintiffs.

104.    As the direct and proximate result of Defendants' conduct Plaintiffs have suffered and will continue to suffer irreparable injury and significant damages, in an amount to be proven at trial.

## COUNT VI – CONVERSION
### (Against all Defendants)

105.    Plaintiffs incorporates all of the above paragraphs as though fully set forth herein.

4913-7989-3038, v. 1

Docusign Envelope ID: 86654067-52F9-44CF-A1DE-4B9859074537

106.     Defendants have intentionally and unlawfully exercised dominion over property owned by Plaintiffs, including their confidential trade secrets and information in the form of, among other things, the Sadkhin Manual, the Sadkhin client list and at least $12,000 in unpaid royalty payments.

107.     Defendants' conduct constitutes a conversion of Plaintiffs' property.

108.     Defendants' acts of conversion were committed willfully, knowingly, maliciously, and in conscious disregard of her legal obligations to Plaintiffs.

109.     Defendants' conduct has caused Plaintiffs injury to its property and business, and damages to be determined at trial.

## JURY DEMAND

Plaintiff. hereby demands a trial by jury of all claims herein so amenable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court enter judgment as follows:

1.     Awarding Plaintiffs pre-judgment and post-judgment interest at the maximum rate permitted under the law;

2.     A preliminary and/or permanent injunction enjoining Defendants and their agents, employees and any other person acting in concert with Defendants from using, distributing, retaining or otherwise possessing the Sadkhin IP in any manner whatsoever;

3.     An award of damages against Defendants in Plaintiff's favor for all losses and liabilities alleged herein;

4.     An accounting of and judgment for the profits to which Plaintiffs may entitled;

5.     Treble damages for willful and malicious trade secret misappropriation;

4913-7989-3038, v. 1

Docusign Envelope ID: 86654067-52F9-44CF-A1DE-4B9859074537

6.      An order requiring Defendants to return all of Plaintiffs' property in their possession, including without limitation, the Sadkhin IP;

7.   Punitive Damages;

8.   Attorneys' fees;

9.   Costs of this action; and

10.  Such further relief as this Court deems just and proper.


Respectfully submitted,


Lucian C. Chen
Todd Nosher
Michael Kivowitz
**MANDELBAUM BARRETT PC**
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
tnosher@mblawfirm.com
lchen@mblawfirm.com
Phone: 973-736-4600
Fax: 973-325-7467

*Attorneys for Plaintiff*

4913-7989-3038, v. 1

## **VERIFICATION**

I, Daniel Radinsky, principal of Sadkhin Franchising Company LLC, the plaintiff in this action, have read the foregoing **VERIFIED COMPLAINT AND JURY DEMAND** dated March 25, 2025 (the "Complaint") and certify under Federal Rule of Civil Procedure 11 to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Signed by:

_____
Daniel Radinsky

Dated: March 25, 2025